Okay, the next argued case is number 17, 2035, A. Shulman Incorporated against Polly One Corporation. Mr. Cohen, when you are ready. Thank you, Your Honor. The district court's decision in this case should be reversed because there is not clear and convincing evidence that different methods of measuring distinctiveness of image or DOI produce different results. The district court, the ASTM, Your Honor, does not say that different methods produce different results. To the contrary, it says that scale values are different. It doesn't say to what degree scale values are different. And that's important. The ASTM study is a study that was dated in 1995, if you look at the first page of the ASTM study. And it may well be that at that point in time that different methods, that the scale values of different methods were different. But at the time of the invention, General Motors had approved four different instruments for measuring DOI. According to Polly One's expert, each of those instruments used a different one of five different methods that Polly One's expert identified. So she identified five methods that existed at the time of the invention for measuring DOI. The General Motors approved instruments used four of those methods. And General Motors had a different method. This is 10 years after the ASTM standard. Would General Motors have- Mr. Cohn, when I look at the claims and specification, this looks like the kind of thing that one skilled in the art would know how to do it. But what your argument reveals in the referring to GM 9508, which isn't a DOI indication that relates to a gravelometer. That's true, your honor. GM 9508P, however, requires the person skilled in the art read GM 4348M. You have to know which of two methods to use. GM 4348M on the second page- It's just the areas where it's going to be measured. That's true, your honor. Zones. But a person skilled in the art would have been aware of the requirements of the auto industry. There's unrefuted testimony to that. Wait, unrefuted testimony? That a person skilled- Where's the unrefuted testimony that someone skilled in the art would have known to use a particular method here? Well, two things. First of all, General Motors 4348M says we approved four different instruments for measuring DOI. They were commercially available instruments. As Judge Lori pointed out, this is a measurement that had been done in the auto industry for years. So at the time of the evidence- You're not answering my question. Where's the testimony that someone skilled in the art would look at either the GM methods in the aggregate or a specific GM method? Our expert testified that a person skilled in the art would look at GM 4348M. But even if that's not available at the time of the event- What your expert says, if you look at page 346, he says, based on my experience, a POSA would look to GM 4348M to determine the instruments to use to measure DOI in order to qualify a part for GM. That is not the issue here. It's not whether someone would look to this to qualify a part for GM. This is a different context. Fair enough, Your Honor. But what does GM 4348M evidence? It evidences that there were four commercially available instruments for measuring DOI, and each of those used a different method. There is no evidence in this record that there was any other commercially available instrument that was used to measure DOI at the time of the invention. So how- What- Did a person of ordinary skill in the art care about what method was used to measure DOI? There's really no evidence of that. GM 4348M says- No evidence that someone would care which method was used? They care what instrument- That seems to me somewhat short of saying that the expert would know what- that a POSA would know what method to use. The POSA would want to know what instrument to use. There's commercially available instruments out there to measure DOI. If you look at the- Where did your experts say that someone would know which instrument to use or what method to use? I don't see that in the context of this pattern. But the question is what would a person of ordinary skill in the art have known to use at the time of the invention? That requires evidence. Right. Which is lacking. The proof is GM 4348M. Which relates to zones. No. Which specifies on the second page that there are four different instruments for measuring DOI. There is- So there were four different commercially available instruments to measure DOI at the time of the invention. There is no evidence that there were any other instruments that were used to measure DOI at the time of the invention for any industry. Forget the auto industry. Those are the instruments. That's the evidence. So what- And there are different methods you can use with each of those instruments, right? Each of the instruments uses a different method according to their expert. There are multiple methods that you can use with a particular instrument. No. Each instrument uses a single method. I thought that the calibration and the results was different and that there was evidence in this record saying that even with respect to a single instrument that you could use a different approach. There is not evidence that even with a single instrument you could use a different approach, your honor. Calibration. Every time you measure something with an instrument, you have to calibrate the instrument. I mean, every instrument comes with an infringement issue. It's not an indefiniteness issue. At the time of the invention, there were four instruments that were used to measure DOI. Their expert says each of those instruments use a different method. Okay, so if General Motors approves four instruments each using a different method, how can those methods yield different results? Why would General Motors have approved four instruments each using a different method if the results were different? It doesn't make any sense. No, ASTM does not say that those four instruments produce different results. It says 10 years before GM4348M was issued and by which time the instruments were different. So 1995 ASTM looks to a bunch of instruments, two of which were Japanese instruments and there's no evidence that they were used at the time of the invention and says the scale values disagree. So what is that evidence of? The scale values disagree. It also says on the very next page, and let me get to this because this is important. On the very next page, Appendix 543, Paragraph 4, it says the values obtained by the measuring procedures given in these methods generally correlate well with visual ratings for DOI. Now the globe box, which is one of the instruments identified in 4348M, was a visual method of determining DOI. So it's saying on the one hand, scale values disagree. On the other hand, it's saying that these methods correlate well with visual ratings. So how different are the scale values? So that's not, and I think there's some confusion in the record here. There were only, their expert identified five different methods. There were only five different methods. So there may be different standards and everything, but five methods of those five methods that existed at the time of the invention for measuring DOI, four of them were used by the GM approved instruments, one for each instrument. And General Motors approval must mean that each of those instruments gives an equivalent result. This is 10 years after ASTM. Does the specification indicate that those several methods should be used? The specification does not say in hyperbole which method to use, but there were only five. Not even close. It doesn't, that's correct, your honor. But it doesn't have to, according to this court's precedent. And there were four instruments and they all produced, if you look at what the GM approval means of these four instruments, each using a different method, what could it mean except that they produce equivalent results? It's telling that when your expert addressed this question, he said that only two of them produced equivalent results. He had used two. Is that not correct? That is, your honor, he didn't say that. Is that correct? That is correct, but he did not say that the other two methods produced different results. He had personal knowledge of two of the instruments. Dr. Gosselin had no personal knowledge of any of the four instruments. There's no evidence that she ever examined the instruments. There's no data showing that if the scale values are different, how different are they? I mean, there is, just to say that scale values are different, the scale is something that an instrument uses. How different are they? Are they different by one? Are they different by 10? Are they different by a half? Are they different in the entire scale or are they only different in one end? I mean, there's no evidence of that. There's no evidence that to say the scale values are different does not tell us that these different methods yield significantly different results. I'd like to reserve the rest of my time unless the court has further questions. Mr. Olson. Good morning, your honors. Various representations have just been made in the oral argument that I'm afraid simply are not supported by the evidence. If you look at Dr. Gosselin's two reports, there's a total of 17 pages and quite frankly, it's painful to read. It's incredible detail. It lays out the differences between all of the various tests for DOI in, as I said, excruciating detail. And that's what counts here. And their claim that you can somehow go to the GM 4348 like it's magic simply doesn't make sense. But they all produce results very close to each other in the same range. What concerns me is we'd be building a body of precedent. Let's say that you have a case of melting point. And so it depends on what thermometer you use. Are we now saying that every patent specification is going to have to be encumbered by saying what kind of thermometer a technician used? If they come up with different numbers, yes. That's my question for you. If I gather that there was not a lot of evidence or testimony that these all come up with numbers in about the same range and tell you about the same information about DOI, because nobody argued about that. Well, this report was quite clear that a single digit of between 69 and 70 was significant because it meant the difference between infringement and non-infringement. And that's the point here is that we have the ASTM saying things come out differently. Be careful. We have the testimony of Mr. Leggett, the man who they hired to actually run the test. And by the way, Mr. Leggett shows how important that particular GM thing is because he actually used GM 9101. So there are not five, but a dozen because they went to the patent office with... While they're telling the district court, the 4348, they're going to the patent office with other ones. So there's a whole thing here of these all can be different. And that's clear from the declaration of Dr. Goslin. And I'd point out that in the Dow case, the word may was used. They may be different. Sometimes they are different. Sometimes they are not. But the point is that they can indeed come out in different numbers because three of the things are digital. And they use different wavelengths and different things and everything. So what you end up having is one will give you a 68 or a 69. And the other one, what's called the glow box, is basically you have a kind of a correlation thing here. You kind of look at it. You go like this and you look back and forth. And it's like American bandstand. I give it a 70. So that's where the big difference here is. And I think what's very important in this case is that we have to review these facts on clear error by the district court. She went through these various different protocols. We all gave her. Dr. Gosling's 17-page declaration. And when you look at it with clear error, there are a series of findings. And we set these forth in our brief on pages 5 and 6. And they have to show that there's clear error for all of those to overturn. So I think it's very important that we also be careful about the case law, which sometimes they want to conflate that it has to be clear and convincing evidence. First of all, the judge twice cited clear and convincing evidence as the standard on page 8 of the opinion, number one. But number two is there's evidence that you look at for purposes of doing a claim construction. That is looking at the evidence, collecting the evidence, and then making a legal interpretation. In our brief, that's the blue box, the blue room. Then there's the other thing where, for example, you have other cases where you do, now you have the claims construed. But now you have a situation where you're applying that construed item to determine whether it is. And one of the things that we have to keep in mind- I don't think it serves your interest to argue against a clear and convincing evidence standard here. I'm sorry, sir? I don't think it serves your interest to argue about the clear and convincing evidence standard, which is what the district court applies. That's correct, Your Honor. But you look at it with reasonable certainty. So our view is that when you look at the evidence that's there, and the judge below did look at the evidence, and she walked through it very carefully, and also said that their expert position was a bare conclusion. And as you properly pointed out, Judge Dyke, that his declaration said that if you're doing this for a GM part, you can use these two that I know about. And in our situation, what we have is Dr. Goslin is very experienced in this. Her background is there, and she discusses all of these things. They're attempting to use the fact that she cited to references to specifically show where she got the various numbers from. Somehow that means she doesn't know the equipment. That was basically to support her position that, yeah, these numbers are actually taken from the materials for these things. So I think what we're looking at is a situation where when you look at it from a clear error standpoint, I believe Judge Ghosn was correct. I believe each of the findings she made were correct. And the evidence that's there, when you compare, for example, what was put down by the experts in the detail and all of that, I believe that we should affirm. We're talking about validity, not infringement. Is that right? You keep saying that you need to know the method of measurement in order to establish infringement. We need to know, yes, to establish how to construe the claim. In other words, we need to know... We're talking about validity. What? We're talking about validity. Let's say that every measurement produces a DOI over 80, whereas the claim puts a limit at 70. So in that case, there would be no question about infringement. Isn't that right? I would say that if you look at our brief, we do talk about the blue room and the red room. What you're talking about, I believe, is in the red room when you're determining whether there's infringement. No, I thought that that's what I heard you say, whereas the case was decided on validity. Isn't that correct? The case was... The validity was because the court could not construe the claim. In other words, in my mind, it's a different situation that she, in her mind, looking at the evidence, in her mind, clear and convincing that she was not able to construe the claim. And therefore, we don't go farther. Sort of like we just had the argument here about a one-on-one situation. You know, if you can't get beyond a certain point in the case, that's it. Well, because you see what's troubling me, that every standard measurement that you can find in the ASTM and it's within those parameters, needs to be put in the specification. I don't believe that that's the law. Well, all they... I'm sorry, Your Honor. All they had to do was to put one in this case, one in the patent application. And this was sort of addressed... It doesn't have to be in the application. You could have testimony that someone skilled in the art would know this is the right measurement method to use. And there isn't any such testimony. That's correct. This is the one to use. And Judge Breyer and I4I brought up the problems as well as there are other citations we have in there where, for lack of a better way to describe it, allowing ambiguity like this is gaming the system. And that's the problem. They should have put in there, just use this test and we wouldn't be arguing today. It's that simple. And who are we going to put the burden on? It's like in a contract case. They wrote it. They should have written it in there. But if a person of ordinary skill in the field would know which test to use, why does it have to be in the spec? That's correct, Your Honor. If somebody of ordinary skill in the art said you use this one test, that would be that. But that's not our fact situation here. We're told there were two tests. No. We had 12 in our evidence. They only had... 4348. There are four tests. What you're saying is that there are two ways to satisfy the requirement. Either by putting it in the spec or by showing in litigation that one skilled in the art would know what that means. Which one to pick. Yes, sir. And you're saying neither one has been met. Neither one is here because, as I said, even if you accept that 4348 has four tests, they work differently. What they did to test for infringement was still a fifth test. They went to the patent office with several other tests. So they even brought a meter with them to show the examiner in an interview what it was. And that's not one on the list. So they're using different tests in different situations. So I don't see how they can argue that one of ordinary skill in the art would pick one test in this case. Finally, if I might, in their reply brief on page 28, they reference the fact that the PTO had issued a final rejection of these claims because of the DOI. And in there, they represented to this court that they would contest that rejection. What has happened is they have withdrawn the DOI from those claims and acquiesced in the examiner's position. And for that reason and the other reasons I've discussed, I believe this court should affirm the judgment of the law. Thank you, Your Honor. First of all, I'd like to correct a misimpression that I may have given. Our expert testified, and I'm looking at appendix page 841. Paragraph 12. Quote, a person of ordinary skill in the art as of May 5, 2008 would have looked to GM 4348M, the standard identified in GM 9508P and would have used any of the approved instruments in GH 4348M to measure DOI. GM 4348M dated June 2005 was in effect on May 5, 2008. As of May 5, 2008, a person of ordinary skill in the art would have consulted GM 4348M and not earlier versions to determine the approved equipment to measure DOI. Now, GM 9101P that my friend mentioned is an earlier version. It's instructions on how to use one of the four instruments. He goes on to say, even if the four different approved devices may have each yielded different DOI results as Dr. Goslin implies, any such differences were within the range of tolerance, tolerances of DOI measurements permitted by GM. In my experience, the use of any of the instruments listed in GM 4348M was acceptable to GM and other auto manufacturers as of May 5, 2008, the date of the invention. So what if it's acceptable to GM? And other auto manufacturers. Dr. Bigocchi. Why is that a test for patentability? His view would be acceptable to GM to have different results. I didn't say just GM. I said, and other auto, he said, and other auto manufacturers. Why is that a test? It's a test, what would a person of ordinary skill in the art have looked to that is evidence of what a person of ordinary skill in the art would have looked to. And I come back to the proposition that there were four instruments in this record identified at the time of the invention for measuring DOI. And GM's approval means they produce equivalent results. The only evidence to the contrary is the bare statement that scale values of different methods do not agree by how much. That's not clear and convincing evidence that different methods produce different results. We have the Takeda case that says that the results, if you have different method measurements, the results must be significantly different. That's just common sense. If I take a measurement with two instruments and one says 9.1 and the other says 9.2, that may or may not be a significant difference depending on the situation. There's no evidence here. There's no quantitative evidence of any differences between these methods. There's a bare statement in a 1995 report which may or may not have been reflective of what happened with these four instruments in 2005. But that shouldn't be clear and convincing evidence that different methods yield different results and it shouldn't be clear and convincing evidence that a person of ordinary skill in the art would not have known how to measure the evidence. And this comes in part from Dr. Gosling who's talking about, she talks about Mazda wants to use this instrument, Ford wants to use this instrument. She doesn't give a date on when Mazda wanted to use the instrument, but in any event, that instrument according to her was equivalent to use the same method as one of the GM approved instruments. The evidence is person skilled in the art asked what instrument do I use to measure this? They didn't ask what method. Their expert asks what method. But at the time of the invention, a person skilled in the art asked what instrument do I use? This was the distinctiveness of images been measured in the auto industry for at least 30 years prior to this date. It's a standard measurement. It's not a measurement that's created for the purposes of patent. It was a case in doubt. This is something that's done all the time. And was it left out of the specification? Sure it was. We don't dispute that. But the law in this circuit is you don't have to put in the specification what a person of ordinary skill in the art would know. There has been, I want to comment on the district court's discussion of the difference between measuring 69 and 70. The district court took Mr. Leggett's testimony that there was an instrument the globe box measures in units of five. And other instruments measure in units of one. They give a digital readout. The globe box is official method. What difference does that make? Well, if in a particular case, if you have a reading around 70 and the claim says a DOI of at least 70, it might not be appropriate in that case to use the globe box because it doesn't give you precise enough measurement. That's not the case here. The readings are either 90 or 95. It's in the record. But I think a person of ordinary skill in the art would know when to use an instrument that gives a more precise measurement and when that isn't required. And so to come to the,  and there's no expert testimony supporting this, that because one of the instruments measures in integers of five and the other measure in integers of one, that that means that the claim is indefinite. There's no basis for that. Your Honor, I see that my time is up and unless the court has any questions. Any questions? Okay, thank you. Thank you, Your Honor. The case is taken under submission.